THE PROSPECT PARK AND CONEY ISLAND RAILROAD COMPANY, Appellant, *v.* S. STRYKER WILLIAMSON et al., Respondents.

Lands once taken for a public use, pursuant to law, under the right of eminent domain, cannot, under general laws, and without special authority from the legislature, be appropriated, by proceedings *in invitum*, to a different public use.

Where a railroad corporation, by proceedings under the General Railroad Act (§ 17, chap. 282, Laws of 1854), acquired title to lands belonging to a town for depot purposes, in which proceedings the town appeared and contested, putting in issue the necessity of the taking of all the lands sought to be condemned, *held*, that it was not open for the officials of the town to question, collaterally, the propriety of the condemnation, and they could not, without special legislative authority, appropriate a portion of the land so taken for a public highway.

In an action by the railroad corporation to restrain the highway commissioners of the town from opening a highway over the lands so acquired

1883.] Pros. P'k & C. I. R. R. Co. *v.* Williamson et al. 553

Statement of case.

it appeared that plaintiff's railroad was constructed simply as an excursion road, for the conveyance of passengers to the sea beach. The land acquired consisted of several acres lying at the terminus of the railroad, on the sea shore. The corporation erected thereon a depot, waiting-room, car-houses, restaurant, track yard and other structures used in the actual operation of the road, leaving a space between the depot building and the beach of about seven hundred feet in length, across which the highway was sought to be laid out; this was occupied by railroad tracks running to high-water mark, plank walks for passengers, and by various structures for their accommodation, convenience and pleasure. During the summer season plaintiff conveys, daily, from ten to fifteen thousand people each way over its road, and runs about one hundred and twenty passenger trains per day. It also appeared that the strip of land was, at times, insufficient for the use of passengers, and was so crowded with people that it was difficult to walk across it; that the proposed highway would deprive the plaintiff of a large part of this area, and would expose its passengers, a large portion of whom were women and children, to danger from passing vehicles. *Held*, that a finding that the laying out of the highway would not interfere with the property occupied by the company for railroad purposes, or cause damage to its business, was not justified; that the erection on the land of decorations and structures for amusement, although they might be deemed superfluous, was not an abandonment by the company of the uses for which it acquired the premises.

*It seems* that if the purposes for which the structures upon the land were used were so foreign to the purpose for which it was acquired, or so reprehensible as to produce a forfeiture of the rights of the company, it did not lie with the highway commissioners to enforce it.

The authority given by the General Railroad Act (§ 1, chap. 62, Laws of 1853) to construct highways across railroad tracks does not extend to lands taken for depot purposes.

*P. P. & C. I. R. R. Co.* v. *Williamson* (24 Hun, 216), reversed.

(Argued June 9, 1882; decided March 13, 1883.)

Appeal from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made February 15, 1881, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term. (Reported below, 24 Hun, 216.)

This action was brought to restrain defendants, the commissioners of highways of the town of Gravesend, from opening and constructing a public highway at Coney Island, across lands of the plaintiff.

The material facts are stated in the opinion.

Sickels — Vol. XLVI.    70

*John H. Bergen* for appellant. Chapter 365 of the Laws of 1880 applies to the lands in question, and forbids the opening the highway through said lands without the consent of the plaintiff. (*Town of Duanesburgh* v. *Jenkins*, 57 N. Y. 177.) This land having been once taken for a public use under the right of eminent domain, it cannot be taken again or appropriated for another, or different public use, without an express act of the legislature for that purpose. (*In re A. & B. R. R.*, 53 N. Y. 574; *In re R. Water Comm'rs*, 66 id. 413; *In re Buffalo*, 68 id. 167; Mills on Eminent Domain, chap. 5, § 45; *In re N. Y. & B. B. R. R. Co.*, *etc.*, Gen Term, 2d Dept., Feby., 1880.) The highway commissioners have no right to open highways through such lands as these in question without the consent of the owner. (*Clark* v. *Phelps*, 4 Cow. 190; *Carris* v. *Comm'rs of Waterloo*, 2 Hill, 443; Laws of 1880, chap. 365.) A highway cannot be laid out over grounds acquired by a railroad for depot purposes necessary for its use, and such act will be restrained by injunction. (*A. N. R. R. Co.* v. *Brownell*, 24 N. Y. 345, 351; 6 Paige, 87; *B. & A. R. R. Co.* v. *Greenbush*, 52 N. Y. 510; *People* v. *Kingman*, 24 id. 559–562; *Miller* v. *Brown*, 56 id. 383.) Plaintiff's road being an excursion road its necessities for land are not confined to mere depot buildings and to the ground on which the superstructure of its tracks are laid, but it is necessary that it have land on which structures for the accommodation of the passengers when they are landed from its cars, can be built, that they may be sheltered from storms and have free access to the ocean beach. (*Matter of N. Y. C. & H. R. R. R. Co.*, 77 N. Y. 262; *R. & S. R. R.* v. *Davis*, 43 id. 144, 145, 146; *In re N. Y. & H. R. R. Co.* v. *Kip*, 46 id. 546, 551, 553, 554, 555; *In re N. Y. C. R. R.*, 49 id. 419; *B'klyn Park Comm'rs* v. *Armstrong* 45 id. 243; *People* v. *Hayden*, 6 Hill, 359; *Niagara Falls R. R.* v. *Hotchkiss*, 16 Barb. 270; *Crowner* v. *Watertown & R. R. R. Co.*, 9 How. 457; 104 Mass. 1; *Matter of N. Y. C. R. R. Co.*, 66 N. Y. 409; *Brown* v. *Winnisimmet Co.*, 11 Allen, 326; Green's Brice's Ultra Vires, 67, 86, 89, 99, 100; *Flanagan*

*v. Gt. W. Ry. Co.,* L. R., 7 Eq. 116 ; *Regby v. Gt. W. Ry. Co.,* 4 R. C. 175.) The question as to whether the land in question and the whole of it is necessary for the purposes of the road is *res adjudicata* by the proceedings to acquire the land. (*Steinback v. Relief Ins. Co.,* 77 N. Y. 498, 501.) The act of 1830 was passed when such avenues as the one in question were not thought of, and it does not apply to or cover the case of Surf avenue. (*A. N. R. R. Co. v. Brownell,* 24 N. Y. 345, 351 ; 6 Paige's Ch. 87.) The proposed highway will destroy erections in the company's yard and grounds, and is, therefore, prohibited by the act of 1853. (*A. & N. R. R. Co. v. Brownell,* 24 N. Y. 345 ; *People v. Kingman,* id. 559.) Chapter 365, Laws of 1880, was applicable to the land in question and was the law which governed this case on the trial. (*Town of Duanesburgh v. Jenkins,* 57 N. Y. 177, 191–2.)

*Samuel D. Morris* for respondent. The effect of chapter 670, Laws of 1869, is simply to restrict the commissioners of highways in the laying out of highways in the town of Gravesend by requiring them to conform with the plan adopted by the commissioners appointed by said act. The effect of chapter 482, section 9, Laws of 1875, is to authorize the board of supervisors to remove that restriction ; it did not authorize the said board to lay out or change highways. (*Phillips v. Schumacker,* 10 Hun, 405.) Where two statutes can stand together, the latter will not be held to repeal the former unless the legislative intent to repeal be manifest. (*People v. Palmer,* 52 N. Y. 83.) A statute only operates as a repeal of a former one to the extent that the two are repugnant. (*Mongeon v. People,* 55 N. Y. 613 ; *S. C.,* 2 S. C. 128 ; *People v. Deming,* 1 Hilt. 271 ; *S. C.,* 13 How. Pr. 441 ; *Werner v. German S'vgs B'k,* 2 Daly, 406.) A statute will not be held to be repealed by implication. (*Mitchell v. Halsey,* 15 Wend. 241 ; *Bowen v. Lease,* 5 Hill, 221 ; *People v. Deming,* 1 Hilt. 271 ; *S. C.,* 13 How. Pr. 441 ; *Cohoes v. Moran,* 25 id. 385.) The courts will not give a retroactive effect to a statute, unless such be already the intention of the legislature. (*Jarvis v. Jarvis,* 3 Edw. Ch.

462; *Aspinwall* v. *Pirnie*, 4 id. 410; *People* v. *Carnal*, 6 N. Y. 473; *Sanford* v. *Bennett*, 24 id. 20; *People* v. *Sup'vrs of Columbia*, 43 id. 130; *Astor* v. *N. Y.*, 62 id. 567; *Randall* v. *Sackett*, 56 How. 225; *N. Y. & O. R. R.* v. *Van Horn*, 57 N. Y. 473.) Even a remedial statute will not be construed to act retrospectively, unless the intent of the legislature be clear. (*People* v. *Sup'vrs of Ulster*, 63 Barb. 83.) An amendment to a statute has no more retroactive effect than an original act. (*Benton* v. *Wickwire*, 54 N. Y. 226.) A vested right to damages for the improvement of a public highway cannot be diverted by a repeal of the act under which they were assessed. (*People* v. *Sup'vrs of Westchester*, 4 Barb. 64.) A statute will not be construed to operate retrospectively, so as to take away a vested right. (*Dash* v. *Van Kleeck*, 7 Johns. 477; *Van Valkenburg* v. *Torrey*, 7 Cow. 252; *Sayre* v. *Wisner*, 8 Wend. 661; *Van Rensselaer* v. *Livingston*, 12 id. 490; *Ward* v. *Kilto*, id. 137; *People* v. *Supdt. of Seneca Co.*, 3 Hill, 116; *Quackenbush* v. *Danks*, 1 Den. 128; *S. C.*, 1 N. Y. 129; *Wood* v. *Oakley*, 11 Paige, 400; *S. C.*, 4 Edw. Ch. 562; *Jarvis* v. *Jarvis*, 3 id. 462; *Calkins* v. *Calkins*, 3 Barb. 305; *McMannis* v. *Butler*, 49 id. 176; *Quinn* v. *N. Y.*, 63 id. 595.) A statute will not be construed to affect pending proceedings unless so expressed. (*Roosevelt* v. *Kellogg*, 20 Johns. 208; *Wood* v. *Oakley*, 11 Paige, 400; *Hyer* v. *Van Valkenburgh*, 8 Cow. 260; *Jarvis* v. *Jarvis*, 3 Edw. Ch. 462; *Le Wall* v. *Grigg*, 9 N. Y. Leg. Obs. 314; *Dunbar* v. *Duffy*, 11 id. 349; *N. Y.* v. *Schermerhorn* 1 N. Y. 423; *Spaulding* v. *Kingsland*, id. 426; *Butler* v. *Miller*, id. 428; *Syme* v. *Ward*, id. 531; *Rice* v. *Floyd*, id. 608; *Tilley* v. *Phillips*, id. 610; *Thompson* v. *Blanchard*, 3 How. Pr. 399; *S. C.*, 4 id. 260; *Farmers' L. & T. Co.* v. *Carroll*, 2 N. Y. 566; *Dunham* v. *Watkins*, 12 id. 566; *Ex parte Eager*, 46 id. 100; *S. C.*, 58 Barb. 557; *Ex parte Remsen*, 59 id. 317.) The construction of the highway across the land described in the complaint does not violate the rule that land already devoted to a public use cannot be taken under general statutes by the right of eminent domain for another public use. (*Sixth Ave. R. R. Co.* v. *Corr*,

72 N. Y. 330; *In re Rochester Water Com.*, 66 id. 413; *N. Y. C., etc., R. R. Co.* v. *Met. Gas Co.*, 63 id. 326; *Morris R. R. Co.* v. *Central R. R.*, 31 N. J. L. 205; *Peoria R. R.* v. *R. R.*, 66 Ill. 174; *Oregon R. R.* v. *Bailey*, 3 Oregon, 164; Mills on Eminent Domain, § 47.) A railroad cannot condemn land and then adapt the same to the use of tenants, and rent the same. (*Heard* v. *Brooklyn*, 60 N. Y. 242; *Strong* v. *Brooklyn*, 68 id. 1; *Proprietors, etc.*, v. *Nashua R. R.*, 104 Mass. 1; 6 Am. Rep. 181; *Whitbeck* v. *Cook*, 15 Johns. 483; *Hooker* v. *Utica Turnpike*, 12 Wend. 371; Mills on Eminent Domain, § 57.) The claim made by the plaintiff that the land in question is used for the purposes of its corporation, and that it is its duty to erect buildings and structures for the amusement and attraction of its patrons, and furnish a place for them to sit and walk about is untenable. (*Rensselaer R. R.* v. *Davis*, 43 N. Y. 137; *Eldridge* v. *Smith*, 34 Vt. 484; *State* v. *Mansfield*, 23 N. J. L. 510; *Nashville R. R.* v. *Cowardin*, 11 Humph. 348; *Hamilton* v. *Annapolis R. R.*, 1 Md. 553; *N. Y., etc., R. R.* v. *Gunnison*, 1 Hun, 496; Mills on Eminent Domain, § 59.) An injunction is not the proper remedy in a case where the commissioners of highways would have the right to lay out a highway, but fail to acquire jurisdiction, or where their proceedings are irregular. (*A. N. R. R.* v. *Brownell*, 24 N. Y. 345; *Hyatt* v. *Bates*, 35 Barb. 308; *Bean* v. *Pettingill*, 2 Abb. [N. S.] 59; *McGuire* v. *Palmer*, 5 Robt. 607; *Liebach* v. *McDonald*, 21 How. 224; *Kipp* v. *N. Y. & H. R. R.*, 67 N. Y. 227.) A highway may be constructed across railroad tracks. (Laws of 1853, chap. 62, § 1; *A. R. R.* v. *Brownell*, 24 N. Y. 345; *Mohawk & H. R. R. R.* v. *Archer*, 6 Paige, 83.)

Rapallo, J. The land through which the defendants propose to open the highway in question, was formerly the property of the town of Gravesend, and was in the year 1876 acquired by the plaintiff for depot purposes, under the provisions of the general railroad law as amended. (Laws of 1854, chap. 282, § 17.) The value of the land and of the interest of a

lessee of the town in a portion thereof, were appraised at upwards of $5,500 and paid, and the plaintiff acquired a title thereto, in fee, pursuant to the act referred to. The general principle that land once taken and appropriated to a public use, pursuant to law, under the right of eminent domain, cannot, under general laws and without special authority from the legislature, be appropriated to a different public use, is well established (Mills on Em. Dom., chap. 5, §§ 45, 46, etc., and cases cited), and does not appear to be controverted on the part of the defendants, but they seek to take this case out of the operation of the principle on two grounds : *First*, that the land in question was not necessary for the use of the plaintiff for railroad purposes; and *second*, that it has never been used by it for such purposes, and that the laying out of the highway in question, through said lands, will not interfere with the property occupied by the plaintiff for railroad purposes, or cause any damage to the business of the plaintiff or affect its franchises.

These facts were found by the trial court in favor of the defendants, but the plaintiff claims that such findings are contrary to the uncontroverted evidence in the case.

The land acquired by the plaintiff, and through which it is proposed to open the highway, consists of a tract containing several acres lying at the terminus of the plaintiff's railroad, on the seashore at Coney Island. The company have erected thereon a depot and waiting room, car houses, a restaurant, track yards and other appliances directly used in the actual operation of the road, and the space between the southerly end of the depot building and the beach, which consists of a strip about seven hundred feet in length, is occupied by railroad tracks running to high-water mark, plank walks by which passengers may walk from the depot to the beach, and by various structures for their accommodation, convenience and pleasure, viz. : benches, seats, places of refreshment, an observatory, newspaper stand, a music stand, and other objects intended to render the place attractive and capable of accommodating a large number of persons.

These appliances are claimed by the plaintiff to be appropriate and necessary for the accommodation of its passengers, for the reason that its railroad is purely an excursion road for the conveyance of passengers to the sea beach for the purposes of bathing and recreation. That it is indispensable that they should have access from the cars to the beach, and that very extensive arrangements are necessary for their reception and accommodation, by reason of the vast numbers of passengers who flock there during the summer season. It being found as a fact that the plaintiffs run from one hundred and ten to one hundred and thirty passenger trains per day, and that the number of passengers conveyed to and from the depot grounds in question is from ten to twenty thousand per day each way.

The question whether all the land taken and now occupied by the plaintiff for these purposes was necessary for its business, was open to litigation in the proceedings for the condemnation of the land, and it was there expressly put in issue by the town of Gravesend, who opposed the condemnation. The court at Special Term necessarily passed upon the question in granting the application for the appointment of commissioners of appraisal, and its order was affirmed by the General Term and by this court.

We do not think it is now open to the officials of the town to question collaterally, in this action, the propriety of the condemnation, on the ground that the land taken was not necessary for railroad purposes, and to appropriate it without any special legislative authority to the purposes of a public highway. Nor do we think that there is any evidence in support of the finding that the opening of the proposed highway through the plaintiff's land will not interfere with the property occupied by the plaintiff for railroad purposes, or cause any damage to its business. No witnesses were called on the part of the defendants on that issue, and the case rests wholly on the testimony of the plaintiff's witnesses. From their testimony it appears that the proposed highway will cross that part of the depot grounds which lies between the southerly end of the depot building and the beach. That in the first

place it will deprive the plaintiff of a large part of the area required for the reception of its passengers, and in the second place that it will expose them to danger from passing hacks and other vehicles; that the ground in front of the depot building, now devoted to the use of the passengers, is insufficient for the purpose; that at times it is compacted with people and difficult to walk across it, or from one portion to the other; that a large portion of the passengers consist of women and children, and that it would be unsafe for them to pass over these grounds if they were put beyond the control of the railroad company, and a public road should be permitted to pass through them. These witnesses also concur in testifying that, for the accommodation of the plaintiff's passengers, all the land it has, and more too, is necessary, and that the construction of the road in question would be highly injurious to the railroad company and its business, and dangerous to its passengers. No witness was called by the defendants to contradict these statements of the plaintiff's witnesses, and the only manner in which it was attempted to controvert them was by showing on their cross-examination that some of the structures on the land were devoted to purposes of refreshment and amusement; that there were restaurants, a drug store, an observatory, a newspaper stand, a music stand, etc., on the premises. These, the witnesses stated, were proper adjuncts of the railroad, and necessary to make the place attractive. But assuming that they were not strictly necessary for railroad purposes, the testimony still stands that all the space which the plaintiff had was necessary for the accommodation of its passengers, and that taking away so large a part of that space as the defendants proposed to take, and appropriating it to the purposes of a public road, would be a serious injury to the business of the railroad. It is obvious that from the character of the road, being an excursion road, over which from ten to twenty thousand persons daily passed each way, trains arriving and departing every few minutes, more accommodation was necessary than a mere ordinary station house where passengers could be received into and discharged from the cars, and thence disperse,

and that they would naturally, if not necessarily, congregate on the depot grounds on the sea beach, and that places for their shelter, rest and convenience were not inappropriate. And the court having adjudicated in the condemnation proceedings, that all the land acquired by the plaintiff was necessary for depot purposes, that adjudication should not be impeached collaterally, especially by the officers of the town which was a party to those proceedings, and had raised therein the question of such necessity, and after being defeated on that issue, had received compensation for the full value of the fee.

The erection on the land of decorations and conveniences for passengers, some of which might possibly be deemed superfluous, was not an abandonment by the company of the uses for which it acquired the premises. These structures were intended to promote the comfort and convenience, and perhaps the pleasure, of the public who might patronize the railroad, and thus augment its business, and were not so foreign to the purposes for which the land was acquired, or so reprehensible as to produce a forfeiture of the rights of the company in the adjacent lands, or of the protection of the law in respect to them. But if the company has incurred any such forfeiture, it does not lie with the highway commissioners to enforce it.

Reference has also been made to the statutes relating to laying out highways, and among others to the provisions of 1 R. S. 514, §§ 58, 64, which prohibit laying out highways through improved lands without compensation. The lands in question are certainly improved lands, and the title of the plaintiff thereto is unquestionable. But we do not rest our decision upon that point, but upon the fact that these lands having already been lawfully appropriated, under the right of eminent domain, to a public purpose, express and direct legislative authority is necessary to justify their appropriation by proceedings *in invitum* to a different public purpose, and that general laws authorizing the laying out of highways are not sufficient. In respect to the crossing of railroad tracks by highways, such express authority is contained in the General Railroad Act, but this authority does not extend to lands taken for

depot purposes. (*Alb. & N. R. R. Co.* v. *Brownell,* 24 N. Y. 345.)

The judgment should be reversed and a new trial ordered, costs to abide the event.

All concur.

Judgment reversed.