*Richmond.*

RICHMOND, FREDERICKSBURG & POTOMAC RAILROAD CO. v. JOHN-
STON AND OTHERS.

January 12, 1905.

1. EMINENT DOMAIN—*Railroad Yards—Special Power to Condemn.*—The
State may, in the exercise of its right of eminent domain, condemn
lands already condemned and appropriated to a public use, but a
general power of condemnation, such as is found in sections 1095
and 1096 of the Code, which authorizes the crossing of the tracks
of a railway company by a highway, or of a highway by the tracks
of a railway company, is not sufficient to authorize the condemna-
tion of property purchased and used by a railroad company for
depots, stations and railroad yards. While the power to condemn
such property is recognized, the right to exercise it must be mani-
fested either by express legislative authority or by necessary im-
plication. General language such as that used in the above men-
tioned sections is not sufficient for that purpose.

Error to a judgment of the Circuit Court of Henrico county,
affirming a judgment of the County Court of said county, in a
condemnation proceeding, wherein the defendants in error were
the plaintiffs, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Leake & Carter,* for the plaintiff in error.

*Conway R. Sands* and *Alexander H. Sands,* for the de-
fendants in error.

KEITH, P., delivered the opinion of the court.

The Richmond, Fredericksburg & Potomac Railroad Company and the Chesapeake & Ohio Railway Company operate lines of railroad from the city of Richmond in a northerly direction into and beyond the county of Henrico. A short distance beyond the city limits a public thoroughfare was constructed between the two roads, and it became desirable, with a view to its extension, to cross the tracks of the R., F. & P. railroad. This company had purchased a parcel of ground from Lewis Ginter, containing about nine acres, for which it paid the sum of $6,714.75, and received a deed dated November, 1891, which was admitted to record on the 1st day of February, 1892. This plat of ground is 120 feet in width and 3,250 feet in length, and is adjacent to the original right of way upon which the principal tracks of the railroad company are laid, and the purpose was to lay down upon it switches and other conveniences for the storing of cars and making up and shifting of trains.

Johnston, Beattie and others filed their petition in the County Court of Henrico county in September, 1900, asking the appointment of a commission to open a road "from the termination of Laburnum avenue, in Brookland Township, at its intersection with the R., F. & P. railroad, just west of Acca, also located in said magisterial district." It is stated in the petition that the road has become a necessity to the petitioners and to the public generally in view of the fact that the R., F. & P. railroad had blocked up a private road which had been used by the public generally for a long period of years as a convenient outlet between the travel of Broad-Street road and the Hermitage and Brook roads, and the section of the county lying between the same.

As a result of the litigation following upon the filing of this

petition, such proceedings were had that on the 21st day of September, 1901, the County Court of Henrico entered an order opening the road, and fixing $125 as the compensation to be paid the railroad company. This order was affirmed by the Circuit Court, and is now before us for review upon a writ of error to that court.

It satisfactorily appears that the railroad company purchased this land for the object stated, in good faith, and without notice of any rights attaching to it upon the part of the defendants in error.

Two questions are presented for decision. The first as to the propriety of the condemnation of the railroad property under the circumstances disclosed in this record; and, secondly, as to the adequacy of the compensation awarded.

Section 1095 of the Code provides that "every railroad hereafter constructed across a county road, street or other highway; and every county road, street, or other highway hereafter constructed across a railroad shall, as far as practicable, pass at surface grade, or pass beneath or above any existing structure at a sufficient depression or elevation, as the case may be, with easy grades, so as to admit of safe and speedy travel over each."

Section 1096. "At every existing crossing such as is mentioned in the preceding section, the grade of the work last constructed, to the full width of the railroad land, shall be made sufficiently smooth and level to admit of safe and speedy travel over such crossing. Where such improvement is to be made in a railroad, it shall be made by the corporation, company or person operating the same. Where it is to be made in a county road, street or other highway, it shall be made by the authorities having the control of such county road, street or other highway and charged with the duty of keeping the same in order."

Acting under the authority conferred by these sections, the county authorities of Henrico seek to construct a public thor-

oughfare across the land of the railway company, purchased for and devoted to the uses of a railroad yard, through which numerous trains engaged in freight and passenger traffic are passing, and in which engines are to be constantly employed in shifting cars and in making up trains. Under such conditions it would be well nigh impossible to construct a crossing at surface grade so as to admit of safe and speedy travel, and it was therefore urged with much force that this consideration alone should defeat the petition for opening the road, as being inconsistent with proper regard for the safety of the travelling public, whether upon the proposed highway or along the railroad tracks.

We shall not, however, rest the decision of the case upon that point. We do not question the power of the State, in the exercise of its right of eminent domain, to condemn land already condemned and appropriated to a public use. The general statute which we have quoted is ample authority for crossing a railway with a public highway, or a public highway with a railway, the safety of the public being carefully protected. But the better opinion seems to be that a general power of condemnation, such as is found in sections 1095 and 1096 of the Code, which authorizes the crossing of the tracks of a railway company by a highway, or of a highway by the tracks of a railway company, is insufficient to authorize the condemnation of property purchased and used by a railroad company for depots, stations and railroad yards. The power to condemn any and all such property is recognized, but the authorities seem uniformly to hold that it must be exercised in obedience to a statute which specifically authorizes its condemnation, and that general language, such as is used in the sections we have quoted, is insufficient to that end.

In Lewis on Eminent Domain (2nd Ed.), sec. 266, it is said: "A general authority to lay out highways and streets is suffi-

cient to authorize a layout across the right of way of a railroad. It makes no difference that the railroad company owns its right of way in fee. An authority to lay out a highway across the track of a railroad company is authority to cross all the tracks at any place. But under a general authority to lay out highways, a part of the right of way of a railroad cannot be taken longitudinally, nor can the way be laid through depot buildings and grounds, shops and the like, which are devoted to special uses in connection with the road and necessary to its operation and in constant use in connection therewith, and which would be materially impaired or destroyed by the taking. But the rule must receive a reasonable application, and a slight interference with the platform of a depot will not prevent the establishment of a highway."

In Elliott on Roads and Streets (2nd Ed.), at sec. 218, it is said: "The power to take property for public use is not restricted to property upon which the right has not been exercised, but it extends to property previously appropriated. Land which has been seized for one public purpose may be taken for another whenever the public necessity requires. A street may be laid upon a turnpike, or on a railroad, or a canal may be seized for that purpose. The Legislature has supreme power over the subject, limited only by the constitutional provisions, and when it exercises this authority, the presumption is that the former use has become less beneficial to the public, and that the necessity of the public demands the appropriation of the property to the new use."

Sec. 219. "The right of eminent domain is a dominant legislative power only called into exercise by the enactment of a valid statute, and when a party asserts a right to seize land previously appropriated to a public use, he must sustain his claim by producing a statute clearly conferring the asserted authority. It will not be presumed, in the absence of such a

statute, that the Legislature intended to again seize property which had been once appropriated. The authority to take property seized and appropriated to another public use may be implied from the language of the statute, but this can only be so where the words employed and the evident intent of the statute make it clearly the duty of the courts to give force to the implication. The intent of the Legislature to destroy the rights granted by former statutes must unequivocally appear. A grant of authority to appropriate land seized under former statutes, or previously seized for public use, cannot, ordinarily, be inferred from a mere general grant. The general rule is that if the two uses are not inconsistent, and both may stand together without material impairment of the first, authority for the second use may be implied from a general grant; but if they cannot co-exist without material impairment of the first, authority to take for the second cannot be implied from a mere general grant of authority to condemn." See also Dillon on Mun. Corp., sec. 688.

In this case it seems to be plain that the uses are inconsistent and that they cannot stand together without a material impairment of the rights of the railroad company. The trains engaged in the transportation of passengers and freight over a great through line are of themselves so numerous as to render a crossing at grade extremely perilous. It is a matter of common knowledge that grade crossings are the cause of a large portion of the accidents which put life and property in jeopardy. How much more dangerous would be the passage along a broad thoroughfare or boulevard intended especially as a pleasure drive, which crosses at grade not only the ordinary business tracks of the railroad, but the numerous switches covering the yard of a railroad company used for storing and shifting its cars and making up its trains   It does not require the testimony of expert witnesses, for it is a matter of common knowl-

edge that the use of the thoroughfare and of the railroad under such conditions would each be attended with constant and inevitable danger.

In *Prospect Park & Coney Island R. R. Co.* v. *Williamson,* 91 N. Y. 552, it is said: "Lands once taken for a public use, pursuant to law, under the right of eminent domain, cannot, under general laws, and without special authority from the Legislature, be appropriated, by proceedings *in invitum* to a different public use."

"Where a railroad corporation, by proceedings under the general railroad law acquired title to lands belonging to a town for depot purposes, in which proceedings the town appeared and contested, putting in issue the necessity of the taking of all the lands sought to be condemned, it was held, that it was not open for the officials of the town to question, collaterally, the propriety of the condemnation, and they could not, without special legislative authority, appropriate a portion of the land so taken for a public highway.

To the same effect see *Matter of City of Buffalo,* 68 N. Y. 167, where Justice Folger says: "The Legislature may interfere with property held by a corporation for one public use and apply it to another, and may delegate the power so to do to another corporation, but such delegation must be in express terms or must arise from necessary implication." *In re Boston & Albany R. Co.,* 53 N. Y. 574; *Boston Water-Power Co.* v. *Boston & Worcester R. Co.,* 23 Pick. 360.

In *Boston & Albany R. Co.* v. *President & Trustees of Village of Greenbush,* 52 N. Y. 510, almost the identical question under consideration was decided. That eminent judge, Chief Justice Church, delivered the opinion of the court, in which it was held that the provision of the act regulating the construction of roads and streets across railroad tracks, which authorizes the laying out of streets and highways across the track of any rail-

road without compensation, etc., has reference only to tracks used for public traffic, and for turnouts and switches, and that the term "track" therein used does not include grounds upon which tracks are laid for storing cars or exclusively for making up trains.

In *Milwaukee & St. Paul Ry. Co.* v. *City of Faribault*, 23 Minn. 167, it is held that under a general power to lay out and open streets in a city, the City Council has no authority to lay out and open a street through the depot grounds of a railroad company, in such manner as to destroy, or essentially impair, the value of the company's easement therein, theretofore acquired under and in pursuance of an express legislative grant for that purpose. See also *Willingtown and Others, Petitioners*, 16 Pick. 89, 26 Am. Dec. 631.

In *St. Paul Depot Co.* v. *City of St. Paul*, 30 Minn. 359, 15 N. W. 684, it was held that the land having been set apart for a specific public use cannot be devoted to another public purpose except the power be expressly conferred by legislative grant, or arises from a necessary implication. And there can ordinarily be no necessary implication of the existence of such authority when the public necessity for the specific appropriation of the particular tract is not made to appear, and where the general power may be beneficially exercised without such taking, or where the two public uses are necessarily inconsistent. And that when the land appropriated by such corporation is lawfully acquired pursuant to its charter, and is actually used and needed for a public purpose authorized thereby, it is not material that it was acquired by purchase instead of by regular condemnation proceedings. *Rochester Water Commissioners*, 66 N. Y. 413; *Yates* v. *Van de Bogert*, 56 N. Y. 526.

The language employed in the sections of the Code relied upon as conferring authority to condemn the property in controversy is of a most general description. It obviously contem-

plates the crossing of tracks devoted to railway traffic, and not to property which railroads may lawfully and must of necessity acquire, such as depots, warehouses, yards for the shifting and making up of trains, and other like purposes incident to their duties. We repeat that we do not question the power of the Legislature to authorize the condemnation of the property in question for the purposes set forth in this record, but we are of opinion that no such power now exists, either by the express authority of the Legislature or by necessary implication from any general power of condemnation for the construction of highways, and we think it may with much propriety be left with the Legislature to say whether or not Laburnum avenue should be permitted to cross the tracks and yard of the plaintiff in error at the point indicated, and if so under what limitations, restrictions, and conditions, in order that the public safety and convenience in the use of the avenue and of the railroad may be guarded and protected.

Having reached the conclusion that there was no power to condemn in the case before us, it is, of course, unnecessary to discuss the question of compensation.

The judgment of the Circuit Court must be reversed and the case remanded.

*Reversed.*