# Staunton.

## The Great Falls Power Co. v. Great Falls & Old Dominion Railroad Co.

### September 14, 1905.

1. EMINENT DOMAIN — *Corporations — Property Already Condemned — Recent Statute — Construction.* — Prior to the recent statute, now in force, one corporation could not condemn property for its use which had already been devoted to a public use by another corporation possessing the power of eminent domain, and this right will not be extended by construction beyond the explicit requirements of the statute.
2. EMINENT DOMAIN — *Scenic Advantages — Public Use — Corporations — Virginia Statute on Condemnations.* — Scenic advantages, however great, or however much they may increase the revenues of an electric railway company chartered to transport persons and property along its line, are not a public necessity, or an essential public convenience within the meaning of the statute forbidding one corporation to condemn the property of another corporation which has the right of eminent domain. A use for mere scenic purposes cannot be said to be a public use. Moreover, to justify such condemnation it must not only appear that the land sought to be condemned is for a public use, but it must affirmatively appear that a public necessity, or an essential public convenience, requires that the land be taken, and that such land is not essential to the purposes of such other corporation.

Appeal from an order of the State Corporation Commission, granting to The Great Falls & Old Dominion Railroad Company permission to condemn property of The Great Falls Power Company.

*Reversed.*

The opinion states the case.

*Allan McDermott, William H. White* and *Richard B. Tunstall,* for the appellant.

*Moon & Keith* and *D. S. Mackall,* for the appellee.

HARRISON, J., delivered the opinion of the court.

This is an appeal from an order of the State Corporation Commission, granting an application, made by the appellee railroad company, to be allowed to acquire by condemnation proceedings certain lands owned by the appellant power company, situated in the county of Fairfax.

The Great Falls Power Company was incorporated by an act of the General Assembly of Virginia, approved March 3, 1894, as amended by an act approved March 5, 1894—Acts, 1893-4, pp. 669-782—for the purpose of acquiring, holding, improving and using water power at the Great Falls in the Potomac river, and for constructing dams therein, canals and other hydraulic and auxiliary steam works, and for the selling and leasing of water power and using the same for manufacturing, &c., generating, transmitting, selling and leasing electricity, electric power and light for railway and canal as well as other purposes.

The appellant owns on the Virginia side of the Potomac river a tract of land containing between seven and eight hundred acres procured at a cost of $500,000.00 for the purposes contemplated by its incorporation and has expended a large sum in perfecting elaborate plans for contemplated improvements. This tract of land is shown by the appellee to be "as wild as the Rocky Mountains."

The Great Falls and Old Dominion Railroad Company was incorporated by an act of the General Assembly of Virginia, approved January 24, 1900, as amended by an act approved March 29, 1902—Acts, 1899-1900, p. 148; Acts, 1901-2, p. 457— with power to locate, build and operate a railroad, commencing at some point on the Potomac river, in Alexandria county,

opposite the District of Columbia, and running thence by the most practicable route to a point on the Potomac river in Fairfax county or Loudoun county, Virginia. The record shows that this railroad line has been located from the Aqueduct bridge, in Alexandria county, opposite the District of Columbia, to a point in Fairfax county on the Potomac river at the Great Falls, a distance of some fourteen miles, and that the work of building an electric railway has been begun and prosecuted to the extent of reconstructing the Aqueduct bridge, and making road-bed, bridges and culverts in Alexandria county at an outlay of about $300,000.00. Both of these companies, the appellant and the appellee, are given under their respective charters the power of eminent domain.

This proceeding was inaugurated under section 52 of the act concerning corporations, to obtain from the State Corporation Commission a certificate in accordance with the provisions of that section authorizing the appellee to condemn the following three several parcels of land belonging to the appellant, located in the county of Fairfax, at the Great Falls, on the Potomac river: Namely, parcel No. 1 containing .93 acres; No. 2 containing 7.68 acres, and No. 3 containing 9.4 acres. The point sought to be condemned is shown to be "very rough and rugged—rocky. About as wild a piece of property as there is anywhere in the State of Virginia."

Section 52 provides as follows: *"No corporation shall take by condemnation proceedings any property belonging to any other corporation possessing the power of eminent domain, unless after hearing all parties in interest, the State Corporation Commission shall certify that a public necessity or that an essential public convenience shall so require, and shall give its permission thereto; and in no event shall one corporation take by condemnation proceeding, any property owned by and essential to the purposes of another corporation possessing the power of eminent domain."* Va. Code, 1904, ch. 46a, sec. 1105e, sub-div. 52.

It is clear from this statute that before the land of the appellant can be condemned by the appellee two facts must be made to appear: 1st, that a public necessity, or that an essential public convenience requires that the land shall be taken; and, 2nd, that such land is not essential to the purposes of the appellant.

Prior to the present law, under which this proceeding was taken, the land of appellant could not have been condemned by the appellee because it had no legislative permission to take the property of another corporation. *Alexandria, &c. R. R. Co.* v. *A. & W. R. R. Co.*, 75 Va. 780, 40 Am. Rep. 743; *R. F. & P. R. R. Co.* v. *Johnson*, 103 Va. 456, 49 S. E. 496.

The right, therefore, of one corporation to condemn property already devoted to the public use by another should not be extended by contruction beyond the explicit requirements of the statute giving that power.

The evidence tends very strongly to show that the land sought to be condemned is essential to the appellant for the development of its water power, and that if taken the power company would be compelled to change its plans entirely; that there is a physical conflict between the use contemplated by the appellee and that designed by the appellant. It is not necessary, however, in the view we take of the case, to pass upon or to consider this question.

Its legislative grant of power authorized the appellee to establish a railroad from some point on the Potomac river in Alexandria county, to some point on that river in either the county of Fairfax, or the county of Loudoun. It would meet the requirements of the charter for the terminal of the road to be located at any point on the river within the limits of the counties mentioned. The appellee owns land on the river above, below, and adjoining that owned by the appellant. Above and adjoining the land of appellant, it owns a tract of thirty acres which appears to have been bought with a view to the use now sought to be made, by condemnation, of the land of appellant.

The property in question, however, covers a commanding view of the Great Falls of the Potomac river, which is shown to be one of the grandest pieces of natural scenery in this country, second only in beauty and attractiveness to the Falls of Niagara.

It clearly appears that this land is sought by appellee as a terminal point on account of the rare scenic features it affords, and because of the attractions it would hold out to pleasure seekers from the city of Washington. In other respects the location possesses none of the advantages ordinarily accuring to a railroad, and but for the beauty of the scene would most likely have been avoided as offering no inducements to such an enterprise. It is further clear from the record that the quantity of land sought to be condemned is far beyond any necessity for mere terminal purposes of an electric railway extending a distance of fourteen miles from the city of Washington. It is manifest from the evidence that the location was selected with no reference to the public use of the road in the matter of freight or the accommodation of the travelling public along the route, but that the real purpose of the condemnation is to establish a park overlooking the Great Falls of the Potomac, for the comfort and pleasure of sight-seers and curiosity seekers, and to thereby add to the revenues of appellee by making the point an attractive place of resort.

To justify the Corporation Commission in taking the action here complained of, it must not only appear that the land sought to be condemned is for public use, but it must affirmatively appear that a public necessity or an essential public convenience requires that the land of the appellant shall be taken.

What is a public use is said to be incapable of exact definition, that it is easier to define by negation than by affirmation. Whatever rule may be formulated on the subject, as a result of the adjudged cases, it cannot, we think, include the condemnation here sought, as one made for a public use. Looking to the charter of the appellee, we find that the company was organized for "public use" in transporting persons and property

along its line, in other words has undertaken an ordinary railroad enterprise. The ground upon which private property may be taken for railroad uses, without the consent of the owner, is primarily that railroads are highways furnishing means of communication between different points, and promoting traffic and commerce. The taking of property for these purposes must always be limited to the lawful necessities of the enterprise. The moment the appropriation goes beyond such necessity it ceases to be justified on the principles which underlie the right of eminent domain. Cooley's Const. Lim., p. 779-80.

The charter of appellee furnishes no warrant for condemning property for the purpose indicated by the record. It is doubtless an attractive point, on account of its inspiring scenery, for the location of a park, and such a terminal would very probably increase the revenues of appellee; but to gratify the senses of the pleasure seeker and thereby incidentally to increase revenues is without the domain of a public use for which private property may be taken under the power of eminent domain.

In a well considered case in New York, where the railroad company was given power to condemn private property for public use, it applied for the condemnation of a part of the land belonging to De Veaux College, which commands a view of the "Whirlpool Rapids." Its purpose was to give visitors a view of those rapids. It was held that this was not a public use for which private property could be taken, the court saying, in part: "The fact that the road of petitioner may enable the portion of the public who visit Niagara Falls more easily or more fully to gratify their curiosity, or that the road will be public in the sense that all who desire will be entitled to be carried upon it, is not sufficient, we think, in view of the other necessary limitations, to make the enterprise a public one so as to justify condemnation proceedings. The case does not, we think, differ in principle from an attempt on the part of a private corporation, under color of an act of the Legislature,

to condemn lands for an inclined railway, or for a circular railway, or for an observatory, to promote the enjoyment or convenience of those who may visit the falls." *In re Niagara Falls & W. Ry. Co.,* 108 N. Y. 375, 15 N. E. 429.

This case is very much in point and the authorities there cited and the reasons given apply with equal force to the case at bar, for it is clear from the record that the part of the railroad running through the land of the appellant is not intended for ordinary traffic, but only for sightseers.

We have seen that the use here sought to be made of appellant's property is not a public use in the sense that it can be taken under the power of eminent domain. The case at bar is, however, very much stronger than the Niagara Falls case, because, granting that the use sought to be made by appellee of the land in question came within the meaning of a "public use" justifying condemnation, still the land could not be taken, for the appellant being a corporation with the power of eminent domain its land could not be condemned by another corporation possessing that power, unless the public use sought to be made of it reached the measure of a public necessity or an essential public convenience. This is the express mandate of the recent statute under which this proceeding is had, and without which the application of appellee could not be entertained.

Scenic advantages were held in the Niagara Falls case not to reach the measure of a public use justifying condemnation proceedings; *a fortiori* must such advantages fail for insufficiency when subjected to the test of the *public necessity* contemplated by our law. Spending a pleasant day in the midst of wild and rugged surroundings on the banks of the Potomac, viewing its "Great Falls" while strolling in a beautiful park, would doubtless be both inspiring and invigorating to those who had the time and opportunity to enjoy it. That sightseers should be furnished such an opportunity may be desirable, but it cannot be said to be a public necessity demanding the displacement of appellant from its private ownership by the compulsory proceedings here invoked.

For these reasons we are of opinion that the State Corporation Commission erred in awarding appellee the certificate complained of, and, therefore, its action must be reversed, the order appealed from set aside, and the cause remanded to the State Corporation Commission for such further proceedings in the premises as the appellee may be advised to take with a view to condemning land for its uses through the lands of the appellant not in conflict with the views expressed in this opinion.

*Reversed.*