THE STATE, THE NEW YORK, SUSQUEHANNA AND
WESTERN RAILROAD COMPANY, PROSECUTOR, v.
THE MAYOR AND ALDERMEN OF THE CITY OF
PATERSON.

Under the authority given by the charter of the city of Paterson to lay out and open streets and to take such lands as may be necessary therefor, upon making compensation, the city has no power to lay out a

street through land used by a railroad company as a freight-yard, when it will deprive the company of the beneficial use of such freight-yard and compel it to transfer its freight business to another locality. To authorize such an invasion of the rights of the company there must be an express grant of power by the legislature, or an implication equally conclusive; such power will not be inferred from the general authority granted to lay out and open streets.

On *certiorari* to review an ordinance of the city of Paterson.

Argued at November Term, 1897, before Justices VAN SYCKEL, DIXON and COLLINS.

For the plaintiff, *Hobart Tuttle.* ·

For the defendant, *Thomas C. Simonton, Jr.*

The opinion of the court was delivered by

VAN SYCKEL, J.  The subject for review in this case is an ordinance of the city of Paterson to lay out and open a public street, known as Fourteenth avenue, across the lands of the prosecutor, in said city.

The avenue proposed to be laid out is seventy feet wide, and crosses the lands of the prosecutor at grade.

The said railroad company owns a strip of land one hundred feet in width, extending from Broadway on the north to Ellison Place on the south, a distance of five hundred and fifty-seven feet on one side, and five hundred and thirty feet on the other; said streets running over the tracks of said railroad on grade.

This piece of land is occupied not only by the railroad company's main double tracks, but is also its freight-yard, and was acquired by the company in the year 1871 by condemnation proceedings.  It has since that date been used exclusively for such railroad tracks and as a freight-yard.  The incoming freight is put in on the side tracks and deposited there for the consignees to come in with their teams and remove it. These sidings are built with special adaptation for that pur-

pose. The company has no other yard or yard facilities in the city of Paterson that can be used in the place of this.

There is a freight-house on this land near Broadway.

The proposed street is laid nearly across the middle of this yard, and according to the testimony would destroy the yard so that the company could not use it to advantage.

The city charter (*Pamph. L.* 1871, § 92) contains all the authority on this subject, which is to lay out, open, vacate, straighten, widen or alter any street, and to take such lands and real estate as may be necessary therefor, upon making compensation in the manner therein prescribed. No special provision is made for taking the lands of a railroad company.

There is no doubt that, under this general authority, the city may lay out a street over the right of way of a railroad corporation, but that does not dispose of the question involved in this controversy.

In the case of *New Jersey Southern Railroad Co.* v. *Long Branch Commissioners,* 10 *Vroom* 28, the right of said commissioners to take for the purposes of a street a strip of land on which the tracks of the railroad company were laid longitudinally was denied. The ground upon which that decision was put was that it would deprive the company of the right to use the land for its corporate purposes. The court said : " Where the use for which the condemnation is prosecuted is of such a character as necessarily to require for its enjoyment the exclusive possession and occupation of the premises, it is manifest the condemnation will be utterly futile, unless it may also operate to extinguish the right of the corporation whose title is condemned to use the land for its corporate purposes. A condemnation that will accomplish this result will destroy, *pro tanto,* the franchises of the corporation, and impair, to that extent, the powers granted by the legislature. * * * The power to invade the privileges of a corporation in such a manner will not be inferred from a naked grant of the power to condemn. It can only be derived from a power granted either in express terms or arising by a necessary implication; and the legislative intent to authorize such an

interference with the rights and privileges of another corpo-
ration, whichever way it may be manifested, must be plainly
perceived."

This is in accordance with the views previously expressed
by the Supreme Court in *Mayor, &c., of Jersey City* v. *Mont-
clair Railway Co.,* 6 *Vroom* 328, where it was held that, in
the absence of an express legislative grant or an implication
equally conclusive, the railroad company could not condemn
and take for its tracks a strip through property acquired by
the city for the purpose of a reservoir.

The principle which controlled the decisions in the cases
cited applies with equal force here. The railroad company
cannot be deprived of the beneficial use of its freight-yard
and be constrained to transact its freight business elsewhere,
unless clear authority is given to the city of Paterson to
require it to do so.

No such authority appears in this case, and it cannot be
inferred from the general power given to lay out and open
streets.

Until the legislature bestows such power upon the munici-
pality, the company cannot be compelled to abandon its
freight-yard and seek another locality for the transaction of
its daily business.

The ordinance is without authority, and should be set aside.