PATERSON AND RAMAPO RAILROAD COMPANY AND ERIE RAILROAD COMPANY, PROSECUTORS, v. THE MAYOR AND ALDERMEN OF THE CITY OF PATERSON.

Argued November 9, 1908—Decided June 15, 1911.

The city of Paterson has power to lay out and condemn land for streets. Under this power it may open a street across railroad tracks at a point where there are two sidings used by the railroad companies to store empty cars, where it appears that the street will not deprive the railroad companies of the beneficial use of the said sidings.

On *certiorari.*

Before Justices REED, BERGEN and MINTURN.

For the prosecutors, *Collins & Corbin.*

For the defendants, *Edward F. Merrey.*

The opinion of the court was delivered by

REED, J.  This writ brings up an ordinance of the mayor and board of public works of the city of Paterson entitled "An ordinance to lay out and open Sixth avenue across the right of way and the lines of the Erie Railroad Company and the Paterson and Ramapo Railroad Company," approved May 20th, 1908.

The main reason for asserting the invalidity of this ordinance is that the place where the new street is to be opened is a freight yard of the contending railroad companies, and that the use of the ground taken by the force of the proposed ordinance will substantially impair the beneficial use of the prosecutor's property for the purpose for which it is now used.

There is no express grant of power to condemn the land of the railroad companies contained in the charter of the city of Paterson, and while the implied power resulting from the special authority to take lands necessary to lay out streets is sufficient to support a crossing of a railroad where the use of the property by a railroad company will not interfere, it will not authorize the taking where the use to which the railroad company's property is put by the company will be materially impaired by the opening up and the use of the same land as a highway or street.  *New Jersey and Southern Railroad Co. v. Long Branch Commissioners*, 10 *Vroom* 28; *New York, Susquehanna and Western Railroad Co. v. Paterson*, 32 *Id.* 408.

The railroad companies' line at the point of the proposed crossing is one hundred and six feet in width.  Upon this strip of land is laid two main tracks running in a northerly

and southerly direction. The condemnation of a crossing of these tracks for the purpose of a street at the grade—as it is admitted this crossing is to be—is supportable under the general power to condemn; but the railroad property is used for tracks other than the two main lines.

To the west of the northerly main line is a long switch, beginning at Fifth avenue about seven hundred feet north of Sixth avenue and running south across Sixth avenue about three thousand feet to a point near River street. From the long switch run off several shorter sidings. One of these sidings leaves the long switch at a point near the south side of Sixth avenue, and extends and curves westerly into the private property of a chemical company. Another siding leaves the long switch about two hundred feet north of Sixth avenue and curves southerly, but does not cross Sixth avenue. Another siding starts two hundred and fifty feet north of Sixth avenue and runs into a silk mill property, but does not cross Sixth avenue.

To the south of Sixth avenue several other switches lead off from the long switch into the works of private shippers, but none of these switches cross Sixth avenue.

To the east of the two main line tracks are, first, a siding beginning eight hundred feet north of Sixth avenue and running south across Sixth avenue parallel with the main tracks a distance of one thousand five hundred feet; secondly, a siding leaving the preceding siding at a point six hundred feet north of Sixth avenue, running south one thousand three hundred feet; next, a siding running off from the second preceding siding at a point one hundred feet south of Sixth avenue, and running north across Sixth avenue into the property of a file works; next, a siding running off from the second preceding siding from a point one hundred and fifty feet north of Sixth avenue into the file works; next, another siding running off from the same switch from a point three hundred feet north of Sixth avenue, and still another starting five hundred feet from the southerly line of Sixth avenue north, but not crossing Sixth avenue.

The switches running across Sixth avenue are the long

switch on the west of the two main lines, and the switches one and two.

The presence of these switches would not create a situation which would prevent the opening of a street across the railroad tracks, for it would amount to no more than increasing the number of tracks to be crossed, and the presence of the tracks afford no obstacle to the joint use of the place in question by the railroad companies and by the city of Paterson; but it is claimed that the sidings are used not merely for the passage of cars over these tracks, but some are used for the purpose of storing cars, which cars are to be used in connection with the general traffic of the railroads.

The two sidings on the westerly side of the main tracks are used for assembling empty westbound cars, ready for movement, so that they can be picked up by westbound trains without additional switching. The openings for the street would require a space of two to four cars, and assuming that the present space is required at times for the storage of cars, it would only require the grading down of an embankment to extend the siding, or would require the movement of some of the cars a distance of about one thousand two hundred feet.

This point of crossing cannot be said to be a freight yard as distinct from the remainder of the tracks in the city. The condition at the point of crossing is generally similar to the condition of the tracks for two and a half to three miles through the city. The entire distance is used for sidings on which cars are temporarily stored and shifted.

The situation is unlike that in the case of *New York, Susquehanna and Western Railroad Co.* v. *Paterson,* 32 *Vroom* 408. In that case there was upon the strip of ground sought to be taken a freight house. The incoming freight was put upon the sidings upon the ground for consignees to come in with their teams and remove it. The company had no other yard facilities in the city of Paterson to be used in place of those at the point of crossing.

In the present case, we think that the opening would not deprive the railroads of the beneficial use of a freight yard.

The ordinance brought up should be affirmed.