ST. PAUL UNION DEPOT COMPANY *vs.* CITY OF ST. PAUL.

April 18, 1883.

**Condemnation of Railroad Land by City for Street.**—A general statutory power, conferred by a city charter, to take lands for public streets, will not be presumed to authorize the city to take land already lawfully appropriated for a depot building and appurtenances, by a corporation duly empowered to acquire lands for such purposes.

**Same—In what Cases Property devoted to a Specific Public Use can be taken for Another Such Use.**—The land, having been set apart for a specific public use, cannot be devoted to another public purpose except the power be expressly conferred by legislative grant, or arises from a necessary implication. And there can ordinarily be no necessary implication of the existence of such authority when the public necessity for the specific appropriation of the particular tract is not made to appear, and where the general power may be beneficially exercised without such taking, or where the two public uses are necessarily inconsistent. *Mil. & St. Paul Ry. Co.* v. *City of Faribault*, 23 Minn. 167, followed.

**Same—Title of Railroad Acquired by Purchase.**—When the land appropriated by such corporation is lawfully acquired pursuant to its charter, and is actually used and needed for a public purpose authorized thereby, it is not material that it was acquired by purchase instead of by regular condemnation proceedings.

**Same—When City is authorized to Issue Bonds for Opening of Street.—**
The special act of February 9, 1881, (Sp. Laws 1881, c. 238,) authorizing
the city of St. Paul to issue bonds for the opening of a certain street, con-
ferred no additional authority upon the city to appropriate the lands of
the plaintiff for a public street.

**Same—Company not Estopped by having Petitioned for Street.—**The
plaintiff corporation, by its officers, presented a petition to the common
council of the city for the opening of a street 30 feet wide, one-half to be
taken from land of the company. After considerable delay, the city coun-
cil, of its own motion, determined to lay out a street on the same line, 38
feet wide, one-half upon land of the company. *Held*, that the company
was not estopped from objecting to the proceeding.

The city of St. Paul having instituted proceedings for the opening
of a street through a portion of plaintiff's land, used by it for depot
purposes, plaintiff brought this action in the district court for Ram-
sey county, to restrain defendant from further proceeding in the mat-
ter. The action was tried by the court, *Brill*, J., presiding, and judg-
ment was ordered in plaintiff's favor as to one piece of land sought
to be condemned by defendant, on which was situated plaintiff's en-
gine-house and heating apparatus, and refused as to the rest of the
land sought to be condemned. From this judgment plaintiff appeals.

*Gordon E. Cole*, for appellant.

*W. P. Murray* and *H. J. Horn*, for respondent.

The general grant of power to defendant to take lands for the pub-
lic use is sufficient to authorize it to take plaintiff's lands for a pub-
lic street, such use not interfering with the use to which it has been
devoted by plaintiff. *In re City of Buffalo*, 68 N. Y. 167, 175; *Mil.
& St. Paul Ry. Co.* v. *City of Faribault*, 23 Minn. 167; Mills on Em.
Dom. § 46; Pierce on Railroads, 154, 155.

VANDERBURGH, J.* The plaintiff corporation was authorized by its
charter to acquire, by purchase or condemnation proceedings, such
real estate as should be convenient and necessary for the location
and construction of depot buildings and appurtenances, and the con-
struction and operation of transfer tracks, so as to unite in one gen-

*Dickinson, J., being absent upon the state board of canvassers, did not
hear the argument in this case, and took no part in the decision.

eral union depot, owned and managed by the plaintiff, the several lines of railroad centering in the city of St. Paul. In constructing its depot building upon lands purchased for such purpose, it left an open space 31 feet in width along the north side, which is appropriated and used as a sidewalk and as a passage-way through the block for the ingress and egress of teams and baggage-wagons to and from the baggage-rooms on the east end of the building, located near the *termini* of numerous railroad tracks entering the depot. The defendant is seeking to lay out a public street on the north side of the depot building, extending through the block upon which it is located from Sibley to Wacouta streets in the city, and to include within it a strip of the plaintiff's land 19 feet in width. The proposed street is to be 38 feet in width. It is conceded that the use of this land for the purposes for which it is opened as a passage-way is necessary for the transaction of plaintiff's business in the receipt and delivery of baggage to and from passenger trains, and that there is no other access to the baggage-rooms for teams and vehicles except upon or across it. This action is brought to restrain the defendant from proceeding in the premises.

The record shows that the business transacted at the depot is very large and increasing, and, as the court finds, "more than 100 trains arrive and depart daily, almost continually coming and going within the day; that the depot is too small for the business transacted," and "said depot grounds are cramped and cannot well be enlarged." "Vehicles and teams conveying baggage to and from said depot are passing over said strip of land very often, almost continually during the day, and it is necessary for them to remain at rest at said baggage-room long enough to load and unload such baggage." The court also states in the finding that "if said street is opened as proposed, it will be a public street. The necessity of said street or its importance to the public has not been investigated in this action." The sidewalk or platform next the depot building, over and upon which the baggage is handled, as at present constructed, occupies 12 feet in width, and the strip of land in question, 19 feet wide, is by itself quite circumscribed for the purpose to which it is devoted. It has been constantly used since the depot was built, in connection with

other portions of the proposed street left open. And the trial court was of the opinion that, by doubling its width as proposed, business with the depot would be facilitated, and that its exclusive control by plaintiff was not necessary; and that its use as a public street, under the circumstances, would not substantially interfere with plaintiff's use thereof. The court, therefore, decided that the city might, under its general power to lay out public streets and to condemn lands for such purposes, include this land in question in the proposed street.

This presents the first and most important question in the case. The fact conclusively appears that the land in question is needed and is actually used for a public purpose, authorized by plaintiff's charter. This places plaintiff's rights upon the same footing as if the necessity and propriety of its appropriation had been preliminarily determined by the court or legislature. Plaintiff's beneficial use is practically exclusive, and cannot be appropriated or taken away except by express authority of the legislature, or by necessary implication. *Milwaukee & St. Paul Ry. Co.* v. *City of Faribault*, 23 Minn. 167. This amount of land seems to be indispensable now, to say nothing of the future demands of plaintiff's business, and the plaintiff is not necessarily limited to a use of this portion of its depot grounds without any modification of the present arrangement. It is entitled to make any changes in the side-walk baggage-rooms, or otherwise, which may better facilitate the use of the premises for depot purposes.

The power to extend streets and highways across railway tracks, at convenient and suitable places, is necessarily implied in the general authority conferred on cities and towns for such purposes, without express provisions on the subject. In like manner, railroads necessarily cross streets and highways on their routes. An adjustment of the two public uses is thus demanded by public convenience and necessity wherever practicable, and may well be presumed to be contemplated in the legislation authorizing such improvements, and by corporations in accepting or acting under such legislation. *Little Miami, etc., R. Co.* v. *City of Dayton*, 23 Ohio St. 510; *N. J. Southern R. Co.* v. *Long Branch Com'rs*, 39 N. J. Law, 28. The same prin-

ciple would doubtless be applicable to other easements sought to be acquired in the land of a corporation, such as the right to extend water-pipes, which may be enjoyed without any serious detriment to a prior public use. *In re Rochester Water Com'rs,* 66 N. Y. 413. This general presumption, however, yields where the second improvement proceeds under a general power, the exercise of which in a particular instance would be subversive of a prior public use. *Milwaukee & St. Paul Ry. Co.* v. *City of Faribault,* 23 Minn. 167; *In re City of Buffalo,* 68 N. Y. 167, 174.

It is also the general rule that a general statutory authority in a charter cannot be presumed to authorize the taking of land already lawfully appropriated and needed as a site for a depot and its necessary appendages, or car-shops, etc., or land within the lines of the location of a railroad and parallel with the track, for the purposes of a street or highway, for the reason that it has already been set apart for a specific public use under the sanction of law, and it cannot, therefore, be diverted to another public purpose, except the power be expressly given or necessarily implied. And there can ordinarily be no necessary implications of the existence of such authority from the grant of a general statutory power to lay out streets, because there is ample authority to appropriate other lands, and especially where, as in this case, the public necessity for the particular street is not demonstrated. *Albany Northern R. Co.* v. *Brownell,* 24 N. Y. 345, 350; *Boston & Maine R. Co.* v. *Lowell & L. R. Co.,* 124 Mass. 368, 373; *City of Bridgeport* v. *N. Y. & N. H. R. Co.,* 36 Conn. 255.

In this case, while the opinions of the witnesses differ as to the effect of the proposed improvement upon plaintiff's rights, there is no substantial dispute as to the facts. The conclusion of the trial court seems to be based upon the theory that the use in common of the entire street will so far add to the convenience of access to the depot that the use of plaintiff's land for a public street can be so harmonized with plaintiff's use thereof for depot purposes as practically to work no serious injury.

This position is not tenable, if it involves a surrender of any substantial rights in the land in question. The plaintiff cannot be required to accept a beneficial use upon land to be taken from others

in exchange for the exclusive enjoyment of its own. The question especially concerns the rights of the company in this land, and the effect thereon of turning it into a public street. *N. J. Southern R. Co.* v. *Long Branch Com'rs*, 39 N. J. Law, 28. Under the charter, the title to land condemned is vested absolutely in the city in fee-simple, and the control and supervision of this street, if opened, will belong to the city, with the right to prevent its being incumbered with "carriages, wagons, and boxes, or any other materials," and the power to grade and improve it, and to grant a right of way therein to street or other railway companies. While it is not probable that these powers would be asserted in hostility to the public interest served by the plaintiff, yet the ownership and control of the land will pass from the plaintiff, and the plaintiff's use of the land must necessarily become subordinate to and conflict with the general public use. There is nothing in the charter which saves to the plaintiff any exceptional use or control. *In re City of Buffalo*, 68 N. Y. 167, 176.

The necessity of handling so much baggage in time for its prompt delivery, and the nature of the business, would naturally necessitate such an occupancy of the street as to abridge and incommode the public right of passage, and be inconsistent with it. *Rex* v. *Russell*, 6 East, 426; *People* v. *Cunningham*, 1 Denio, 524; Angell on Highways, § 227. The two public uses, therefore,—the one requiring control by the city and free passage for the public, and the other, control by the plaintiff and such occupancy as its business requires,— are necessarily inconsistent.

2. The special act of February 9, 1881, authorizing the city to issue bonds for the opening of this street, (Sp. Laws 1881, c. 238,) confers no additional authority upon the city in the premises. It states the object for which the appropriation is authorized, but it does not assume to grant any additional power to take this or any other land, leaving existing rights and remedies undisturbed.

3. As before indicated, plaintiff is authorized by its charter to obtain, by purchase or otherwise, "all necessary sites and grounds or land for its union passenger depot, or other buildings or appurtenances requisite for the proper carrying on of its business." (Sp. Laws 1879, c. 318, § 1.) This provision was valid, though it left to

the company a discretion as to the location and amount of land to be taken. *Cotton* v. *Mississippi & Rum River Boom Co.*, 22 Minn. 372; *In re N. Y. C. & H. R. R. Co.* v. *M. G. L. Co.*, 63 N. Y. 326, 330. It is not material that the land in question was acquired by purchase, instead of by regular condemnation proceedings. *Yates* v. *Van de Bogert*, 56 N. Y. 526. It was lawfully acquired by plaintiff for its corporate purposes, and is actually devoted to and needed for a public use, within the legitimate exercise of its corporate franchises. The question for the court, when it arises in a judicial investigation in such cases, is not how the land was acquired, but how it is used, or whether it is necessary for a public purpose. *In re Rochester Water Com'rs*, 66 N. Y. 413, 418.

4. A petition in the name of the plaintiff, signed by its secretary and president, asking for the opening of a street 30 feet wide through the block in question, one-half to be taken from the land of plaintiff, was presented to the city council in September, 1879. Thereafter such proceedings were had that the council, after inquiry and investigation into the matter upon the merits, determined to lay out a street 38 feet wide, including the strip of land in controversy. The original proceedings were, however, attended with so much delay that, in the mean time, the depot buildings were erected, and in March, 1881, such proceedings were ordered abandoned, and immediately thereafter the common council commenced the present proceedings to open the street. But, before the final assessment was completed, the plaintiff duly objected and remonstrated against the opening of the street. Whether the secretary and president or other officers could, as agents of the plaintiff, bind the corporation by dedicating any portion of this land for a street, or could estop the plaintiff by a petition therefor, we need not inquire, as, in our opinion, the petition by such officers, made in 1879, for a street 30 feet wide, did not work an estoppel against the plaintiff to object to the present proceedings.

Judgment reversed.