(52 Misc. Rep. 596)

### In re EAST 161ST STREET IN CITY OF NEW YORK.

(Supreme Court, Special Term, New York County. February 13, 1907.)

EMINENT DOMAIN—PROPERTY SUBJECT TO APPROPRIATION—PROPERTY DEVOTED
　　TO PUBLIC USE—STATUTES.

　　　The real estate acquired by a railroad company for a public use, within
　　Railroad Law 1890, p. 1086, c. 565, § 7, as amended by Laws 1893, p.
　　1382, c. 676, whether by purchase or condemnation, and used and neces-
　　sary for the operation of its railroad, cannot be taken for a street, in
　　the absence of special authority, and the provisions of Consolidation Act,
　　Laws 1882, p. 262, c. 410, § 958, and Greater New York Charter, relating
　　to the acquisition of land for a street, do not confer sufficient authority.

　　　[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain,
　　§ 108.]

Proceedings by the mayor, aldermen, and commonalty of the city of New York to acquire land for the widening of East 161st street. Dismissed.

Wm. B. Ellison, Corp. Counsel (John P. Dunn and Thomas C. Blake, of counsel), for City of New York.

Ira A. Place (Robert L. Luce, of counsel), for New York Cent. & H. R. R. Co.

NEWBURGER, J. This is a proceeding instituted by the mayor, aldermen, and commonalty of the city of New York to acquire title to land required for widening 161st street, from Elton avenue to Mott avenue. The land in question is a strip 40 feet in width and about 640 feet in length, comprising the northerly end of the New York Central & Hudson River Railroad Company's Mott Haven yard, used as a freight depot, storage yard, and place for cleaning and putting in order for traffic passenger cars. The city proposes to acquire the fee of the land and use it for street purposes. The respondent, the New York Central & Hudson River Railroad Company, is a corporation organized under the general laws of the state, and by consolidation with, and leasing of several railroads, became the owner of a railroad from Forty-Second street northerly, crossing 161st street. The New York Central & Hudson River Railroad Company, the New York & Harlem Railroad Company, and the New York, New Haven & Hartford Railroad Company, under various agreements, use the same terminal station. In 1887, the New York & Harlem Railroad had been constructed, and was then operated at the grade of existing streets through the then Twenty-Third and Twenty-Fourth Wards of the city of New York (now the borough of the Bronx).

In that year chapter 721, p. 937, of the Laws of 1887, was passed, conferring upon the park department the power to change the location, width, grades, etc., of any street, and to discontinue and close any street, avenue, road, etc., or any part thereof, and change any plan or plans for sewerage and drainage, and the department of public parks was also authorized to agree with the New York & Harlem Railroad Company for the depression of its tracks and the changing of the grade of its railroad in the said wards. See parts 1 and 2 of section 1, c. 721, p. 937, Laws 1887. Pursuant to the provisions of this act, contracts were

made for the depression of the tracks of the railroad in such manner as to avoid the crossing of streets at grade. The company at that time acquired all the land bounded northerly by 161st street, as it then existed, 60 feet in width, easterly by Morris avenue, southerly by the New York & Harlem Railroad, and westerly by Sheridan avenue. At the time of the acquisition of these lands no streets or avenues were actually opened through any part of them. Certain streets, however, were shown on the map. On the 11th day of February, 1889, the railroad company applied to the department of public parks to discontinue all these streets and avenues, which application was granted by the board after the railroad company had agreed to depress the portion known as the "Port Morris Branch." Thereupon the company devoted the entire tract of land to station and yard purposes.

By the passage of chapter 545, p. 965, of the Laws of 1890, jurisdiction of the streets in the Twenty-Third and Twenty-Fourth Wards of this city were transferred from the department of parks to the commissioner of street improvements. In pursuance of the power thus vested in him, the new commissioner proceeded to carry out the provisions of this act by preparing maps, surveys, plans, and profiles of all streets. Hearings were had, and the respondent, the New York Central & Hudson River Railroad Company, appeared and objected to the proposed layout of 153d, 156th, and 158th streets through this yard, and to the widening of 161st street on the southerly side by taking 40 feet off these yards. Despite the objections, however, the maps were approved. On July 5, 1895, the board of street openings authorized the commencement of these proceedings. The only issue to be determined is: Can property which has been acquired by a railroad company that is used and necessary for the purposes of running and operating the railroad be taken by the city under condemnation proceedings?

By chapter 282, p. 610, of the Laws of 1854, § 4, amending the railroad law of 1850, it is provided that:

"All real estate acquired by any railroad corporation under and pursuant to the provisions of this act, for the objects and purposes herein expressed, shall be deemed to be acquired for public use."

Section 7, c. 565, p. 1086, of the railroad law of 1890, as amended by chapter 676, p. 1382, of the Laws of 1892, provides:

"All real property required by any railroad corporation for the purpose of its incorporation, shall be deemed to be required for a public use."

In Re New York & Harlem Railroad Company v. Kip, 46 N. Y. 546, 7 Am. Rep. 385, it was held:

"That passenger depots, convenient and proper places for the storing and keeping of cars and locomotives, proper, secure, and convenient places for the receipt and delivery of freight, and for the safe and secure keeping of property between the time of its receipt and dispatch, or after its arrival and discharge, and before delivery, are among the acknowledged necessities for the running and operating a railroad, and the right to take land for those purposes is included in the grant of power given by the general railroad act."

It is immaterial whether the lands were acquired by purchase or condemnation. See Matter of the City of Buffalo, 68 N. Y. 167; Yates v. Van de Bogert, 56 N. Y. 526; St. Paul Union Depot v. City of

St. Paul, 30 Minn. 359, 15 N. W. 684. Land having been set apart for a specific public use cannot be devoted to another public use except the power be expressly conferred by legislative grant. See Matter of Street Opening, St. John's Cemetery Case, 133 N. Y. 329, 31 N. E. 102, 16 L. R. A. 180, 28 Am. St. Rep. 640; Matter of New York, Lackawanna & Western Railroad Company, 99 N. Y. 12, 1 N. E. 27; Milwaukee & St. Paul Railway Company v. City of Faribault, 23 Minn. 167; St. Paul Union Depot Company v. St. Paul, 30 Minn. 359, 15 N. W. 684.

There appears to be no dispute that the land sought to be acquired in these proceedings has been used by the respondent for some years for yard purposes, and the railroad company's business is very large and constantly increasing; that vehicles and teams conveying goods and merchandise are passing over said strip of land; that the tracks necessary for the handling of cars occupy a portion of the strip sought to be taken, and will have to be lengthened in order to provide for the increasing business of the company. It has been repeatedly held that a railroad corporation in taking land is not limited to its present use, but may acquire for its prospective use, provided the necessity for such use, in the immediate future, is established beyond reasonable doubt. In re Application of the Staten Island Rapid Transit Company, 103 N. Y. 251, 8 N. E. 548.

The petitioner's contention, that under section 958 of the consolidation act (Laws 1882, p. 262, c. 410), and the provisions of the Greater New York Charter, the city is authorized to acquire the land in question, cannot avail, for the reason that the acts referred to are general, and the authorities seem to be uniform that lands once dedicated to a public use can only be taken for another public use by special authority. See In re New York, Lackawanna & Western Railroad Company, 99 N. Y. 23, 1 N. E. 27; St. Paul Depot Company v. City of St. Paul, 30 Minn. 359, 15 N. W. 684. A careful consideration of the evidence submitted leads me to the conclusion that parcel B has been dedicated to a public use, and is necessary for the railroad for the proper transaction of its business, and I cannot find any provision of law that will warrant this court in taking the lands in question by condemnation proceedings.

These proceedings must, therefore, be dismissed.