In the Matter of the Application of the CITY OF NEW YORK, Respondent, Relative to Acquiring Title to Lands in the Borough of Brooklyn for the Purpose of Opening and Extending Saratoga Avenue, Chester Street and Bristol Street.

NASSAU ELECTRIC RAILROAD COMPANY, Appellant.

Eminent domain — Kings county — construction and application of statute (L. 1869, ch. 670) authorizing the making and filing of maps and plans of future roads and streets in said county — such statute does not operate as an appropriation or dedication of lands described in a map or plan, for roads and streets — lands already taken for public or quasi public use cannot be taken except in specific condemnation proceedings.

1. When a publ c corporation having public obligations with power to acquire property by eminent domain acquires the same by purchase for the purpose of carrying out such obl gations, it can hold it for such public use with the same right of priority there n that it would . have had if it acquired it pursuant to the provisions of the Code of Civil Procedure relating to condemnation.

2. When lands are used in immediate and necessary connection with a public trust by a public corporation, the courts recognize that they are held for a public use or purpose and a general grant of power to condemn lands will not extend to lands already devoted

to a public use.  In order to reach such lands the grant of power must be specific.

3. The statute (L. 1869, ch. 670) was enacted for the purpose of laying out a plan for future roads and streets in the towns of Kings county, and to prevent the laying out of roads and streets except in accord with the plan therein set forth.  The act does not authorize the taking of land for the roads and streets shown thereon for public use without the institution of a new and independent proceeding.

4. Where a street railroad company has acquired by purchase lands within a town of Kings county, which it has used and is using for a car barn and for a storage yard for its trolley cars, in the operation of its railroad, and it is necessary for the railroad company, in the conduct and operation of its business, to have and use real estate conveniently located to its tracks for the storage of cars and their equipment and for the purpose of making repairs thereon, said land was acquired by the railroad company for a public use, that of a railroad use, and being so acquired and used said land cannot be taken for street purposes under chapter 670 of the Laws of 1869.

*Matter of City of New York (Saratoga Avenue)*, 180 App. Div. 638, reversed.

(Argued February 26, 1919; decided April 8, 1919.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 14, 1917, which reversed an order of Special Term excluding real property of the Nassau Electric Railroad Company from the lands sought to be condemned in this proceeding.

The order granting leave to appeal to this court certified that the following question of law had arisen which in its opinion ought to be reviewed by the Court of Appeals, viz.: " Has the city of New York by this proceeding the right against the objection of the Nassau Electric Railroad Company to acquire title for the purpose of a public street to the real property of said company within the lines of Chester street and Bristol street as laid out on the map of the town survey commissioners of Kings county, pursuant to chapter 670 of the Laws of 1869, as amended."

9

The map therein referred to was duly filed in 1874. The lands in question in 1874 were included within the town of Flatlands, county of Kings, and since 1897 have been included within the city of New York.  The Nassau Electric Railroad Company is a street surface railroad corporation and the city of New York a municipal corporation.  The city of New York in 1911 duly commenced a proceeding to acquire title to lands required for the opening of certain streets in said city.

The Nassau Electric Railroad Company owned a part of the lands sought to be acquired for opening and extending Chester and Bristol streets in said city and denied the right of the city of New York to take the same from it without its consent.  The referee to whom was referred the issues of law and fact raised by the answer of the Nassau Electric Railroad Company found as a matter of fact among other things:

" VIII. That prior thereto and at the time said petition of The City of New York was presented to the Supreme Court, and ever since, the defendant, Nassau Electric Railroad Company, has used said above-described land for a car barn and for a storage yard for its trolley cars, used by it in the conduct of its business as a street surface railroad corporation, which said cars were used by it in the operation of its railroad.  The said real estate was acquired by the Nassau Electric Railroad Company for, and has been devoted to the use of a storage yard and car barn for its cars, at the times hereinbefore mentioned and the same is held by the defendant, the Nassau Electric Railroad Company, for a public use.

" IX.   That it is necessary for the defendant, the Nassau Electric Railroad Company, in the conduct and operation of its business, as a street surface railroad corporation, to have and use real estate conveniently located to its tracks for the storage of its cars and their equipment, when the same is not in use and in operation and for the purpose of making repairs thereon.

" X. That the opening of Chester and Bristol streets through the above-described real estate and devoting the same to a public use for street purposes, as proposed by the City of New York, in said opening proceeding, would interfere with the use to which the defendant, the Nassau Electric Railroad Company, now uses real estate and has used the same for many years prior to the presentation of said petition by the City of New York and the use of the land in Chester and Bristol streets, as the same is proposed to be opened for street purposes, would be inconsistent with the use of the same by the defendant, the Nassau Electric Railroad Company, for the storing of cars therein, as it now uses the same and has used the same since and prior to the presentation of said petition.

" XI. That the land in Chester street, as the same is proposed to be opened by the City of New York, as the same affects the above-described real estate, has never been dedicated for street purposes and the City of New York has never acquired any right, title or interest therein, or thereto, and has no right, title or interest therein or thereto now."

He also made a finding in regard to Bristol street similar to finding IX in regard to Chester street.

The referee also found as conclusions of law:

" I. That the land in Chester street, as the same is proposed to be opened, so far as the same is part of the land belonging to the defendant Nassau Electric Railroad Company, as described above, has never been dedicated to a street use and the public has never acquired any interest therein for street purposes or otherwise.

" III. That said land in Chester street was acquired by the defendant Nassau Electric Railroad Company for a public use, namely, that of a railroad use, and being so acquired and used, said land cannot now be acquired by the City for street purposes."

He also found as conclusions of law regarding Bristol

street the same as he found regarding Chester street in said conclusions I and III.

The report of the referee was confirmed and an order was duly made excluding the property of the Nassau Electric Railroad Company from the proceeding. An appeal was taken therefrom to the Appellate Division where said order was reversed. (*Matter of City of New York [Saratoga Avenue]*, 180 App. Div. 638.) An appeal is taken to this court by permission from said order of reversal.

*Charles A. Collin, John L. Wells, Charles L. Woody* and *George D. Yeomans* for appellant. The provisions of the New York charter for the preparation and filing of the tentative maps of proposed streets (§§ 438–443), and for the actual opening of such proposed streets by the acquisition, for such purpose, of the lands shown on such tentative maps to be included in the proposed streets (§§ 970, 971), are merely general statutes giving merely general authority to acquire such lands by condemnation; and such general statutes are not sufficiently specific to authorize the city to acquire such lands when already devoted to another public use, such as a street surface railroad use. (*Matter of City of New York [Newport & Neponsit Aves.]*, 218 N. Y. 274; 171 App. Div. 928; *German & Co. v. Meyers*, 32 App. Div. 41; *People ex rel. N. Y. C. & H. R. R. R. Co. v. Priest*, 206 N. Y. 274; *Matter of City of New York*, 196 N. Y. 255; *Forster v. Scott*, 136 N. Y. 577; *People ex rel. Swain v. Reville*, 50 Misc. Rep. 474; *Matter of City of New York [Briggs Ave.]*, 118 App. Div. 224; *Matter of Mayor, etc. [E. 161st St.]*, 198 N. Y. 606; *Matter of City of New York [Seneca Ave.]*, 98 Misc. Rep. 712; *Adee v. Nassau El. R. R. Co.*, 177 N. Y. 548; *Peck v. Schenectady Ry. Co.*, 170 N. Y. 298; 72 App. Div. 404.) The filing of the tentative maps of the proposed streets by the local authorities of the town of Flatlands in 1874 was not such

a preliminary step in the process of devoting the lands included in such proposed streets to a public use as gave to the city, the successor to the town of Flatlands, priority of right to condemn such lands, as between the municipality and the railroad company; and even if such priority of right to condemn had been acquired in 1874, such priority of right was lost by the failure of the municipality to take any further action in the matter for more than thirty years thereafter. (*Matter of Mayor, etc. [Tiffany St.]*, 84 App. Div. 525; *Ingersoll* v. *N. E. R. R. Co.*, 157 N. Y. 453; *Roddy* v. *B. C. & N. R. R. Co.*, 32 App. Div. 311; *Matter of City of New York [64th St.]*, 183 App. Div. 708; *Matter of City of New York [Newport Ave.]*, 218 N. Y. 274; *Edwards* v. *Law*, 6 App. Div. 541.)

*William P. Burr, Corporation Counsel (Joseph A. Solovei* and *Patrick S. MacDwyer* of counsel), for respondent. The prior location and laying out of Chester and Bristol streets by the town survey commissioners under chapter 670 of the Laws of 1869, and the supplementary acts, conferred on the town of Flatlands and its successor, the city of New York, the paramount right to acquire title to said streets for the use of the public, as against the Nassau Electric Railroad Company's subsequent acquisition and appropriation of the *locus in quo*. (*Rochester, H. & L. R. R. Co.* v. *New York, etc., R. R. Co.*, 110 N. Y. 128; *Suburban Rapid Transit Co.* v. *Mayor, etc., of New York*, 128 N. Y. 510; *Matter of City of New York [Newport Ave.]*, 218 N. Y. 274; *Matter of Pocantico Water W. Co.* v. *Bird*, 130 N. Y. 249; *People* v. *Adirondack Ry. Co.*, 160 N. Y. 225; *People* v. *Supervisors*, 112 N. Y. 585, 588; *People* v. *Flagg*, 46 N. Y. 401; *Town of Kirkwood* v. *Newbury*, 122 N. Y. 571; *Hayward* v. *Mayor, etc.*, 7 N. Y. 314; *Matter of City of New York [Ely Ave.]*, 217 N. Y. 45.) As against the right of the city of New York, as successor of the town of

Flatlands, to open these streets, the land of the appellant lying within the lines of Chester and Bristol streets is not held for a public purpose. (*St. Louis R. R.* v. *Blind Institute*, 43 Ill. 303; *Matter of Boston & Albany R. R. Co.*, 53 N. Y. 574; *Matter of Rochester Water Comrs.*, 66 N. Y. 413; *People* v. *Adirondack Railway Co.*, 160 N. Y. 225; *Matter of Mayor, etc.* [*East 161st Street*], 52 Misc. Rep. 596; 135 App. Div. 912; 198 N. Y. 606.)

CHASE, J. In considering the question submitted to this court it is necessary first to determine whether the appellant is now holding the lands in controversy for a public use. It acquired title thereto by purchase years before this proceeding was commenced.

When a public corporation having public obligations with power to acquire property by eminent domain acquires the same by purchase for the purpose of carrying out such obligations, it can hold it for such public use with the same right of priority therein that it would have had if it had acquired it pursuant to the provisions of the Code of Civil Procedure relating to condemnation. (Lewis on Eminent Domain [3d ed.], sec. 443.)

The appellant has for years used the lands in question on which to maintain its car barns, car tracks and a storage yard for trolley cars. The lands are contiguous to its main tracks on which its franchises are exercised. Its use as such has been continuous and immediately connected with its business as a street surface railroad corporation. Such use is necessary in running and operating its railroad as more specifically stated in the findings quoted in the statement of facts herewith.

When lands are used in immediate and necessary connection with a public trust by a public corporation the courts recognize that they are held for a public use or purpose. (*Matter of N. Y. & H. R. R. Co.* v. *Kip*, 46 N. Y. 546; *Matter of Mayor, etc., of N., Y.*, 52 Misc. Rep. 598; affd., 135 App. Div. 912; 198 N. Y. 606; *Mat-*

*ter of N. Y. C. & H. R. R. R. Co.,* 77 N. Y. 248; *State v. Commissioners of Mansfield,* 23 N. J. Law 510.)

It is settled that a general grant of power to condemn lands does not extend to lands which have already been devoted to a public use. (*Matter of City of New York [Newport Avenue],* 218 N. Y. 274; *Matter of Mayor, supra; N. Y. C. & H. R. R. R. Co. v. City of Buffalo,* 200 N. Y. 113.)

To reach such lands the grant of power must be specific. (*Matter of City of New York [Newport Avenue], supra.*)

There is no such specific grant of power in chapter 670 of the Laws of 1869 nor by the amendments thereto in 1872. (Chapter 331) and 1874 (Chapter 581), nor by sections 438–443 and 970, 971 of the Greater New York charter. (*Matter of City of New York [Newport Avenue], supra.* See opinion of Crane, J., in S. C., 77 Misc. Rep. 250; adopted in S. C., 171 App. Div. 928.)

The answer to the question submitted to this court depends, therefore, upon whether by the survey made by the commissioners appointed pursuant to chapter 670 of the Laws of 1869 and the filing of the map by them, the town of Flatlands and its successors acquired a right and interest in the lands in controversy superior to that of all other persons therein and by reason of which the acquisition of said lands and the use of them by the railroad company on which to maintain its car barn and storage tracks has always been and now is subordinate to the right of the town of Flatlands and its successors to take the same for street purposes.

It appears by the title of chapter 670 of the Laws of 1869 that it was enacted for the purpose of laying out " *a plan for roads and streets in the towns of Kings county.*" It does not purport to be an act *to lay out roads and streets.*

It appointed the then present (1869) supervisors of the towns of New Lots, Flatbush, Flatlands, New Utrecht and Gravesend in said county and the chairman of the

board of supervisors of said county commissioners as therein provided. (Section 1.) They were directed to appoint a competent surveyor to make and execute all requisite surveys and maps under their direction. (Section 3.) They were expressly directed to " plan and lay out streets, roads and avenues in the said towns, conforming to the avenues and streets and plan of the city of Brooklyn, as now terminated at the city line, as nearly as may be practicable and judicious." They were further directed to have a map made thereof and " file the same, when completed, in the office of the clerk of Kings county," and " place suitable monuments to indicate the several localities." (Section 4.) The purpose and effect of such survey and map are stated in section 5 of the act which is as follows:

" The said commissioners, surveyors or assistants, may enter, in the day time, into and upon any lands and premises which they shall deem necessary for the purposes aforesaid. They shall have exclusive power to lay out streets, avenues and public places, of such width, extent, and direction as they shall decide, and after the passage of this act, until the adoption of such permanent plan, no person or persons, or officers, shall lay out streets or roads in said towns, without the consent of said commissioners first obtained, except in cases where streets, avenues or roads have been or shall be authorized by special acts of the Legislature, in which cases such acts shall have full power and effect, anything in this act to the contrary notwithstanding. After the establishment or adoption of such permanent plan, no street or avenue shall be laid out in said towns, or either of them, except in accordance with said plan so adopted, and all streets or avenues afterwards opened, widened or improved, shall be made to conform to such permanent plan and the lines thereof. If any buildings shall be erected on the line of any avenue or street, as laid out on said plan after the filing of said map, no compensation

shall be paid to the owner thereof on the opening of said street."

The act does not include any direction or authority to the commissioners or others to institute a proceeding to acquire title of any kind to the lands included within the roads and streets to be shown on the map. It does not provide an efficient step toward an appropriation of the lands. The only provision of the act directly affecting the several towns named therein and the inhabitants thereof, is, that after the adoption of the permanent plan " no street or avenue shall be laid out in said towns or either of them except in accordance with said plan so adopted."

It does not purport to open any street or highway or dedicate any land to street or highway purposes or direct when, if ever, the same shall be opened and used as a street or highway.

The act is intended, as the title expressly states, to provide a *plan for future roads and streets* in the towns of Kings county and prevent the laying out of roads and streets except in accord with such systematic and well-considered purpose. The act does not purport to do more. It does not take any right, title or interest from the owner of the property included within the roads and streets as shown on the map. The plan has become subject to change (Greater New York Charter [L. 1901, ch. 466], section 442), but otherwise all authority under the act of 1869 was exercised when the map was filed. The roads and streets shown thereon cannot be actually taken for public use by the municipality without the institution of a new and independent proceeding. Such proceeding may not be commenced in nine hundred and ninety-nine years or it may never be commenced.

The act falls far short of dedicating the lands to public use. If the provisions of the act and the action of the commissioners thereunder can be construed to prevent the owner of property without limit of time from con-

veying an unincumbered title thereto it takes private property without compensation and falls within the constitutional prohibition. (*People ex. rel. N. Y. C. & H. R. R. R. Co.* v. *Priest,* 206 N. Y. 274, 288; *Ingersoll* v. *Nassau Elec. R. R. Co.,* 157 N. Y. 453, 463; *Wynehamer* v. *People,* 13 N. Y. 378; *Bertholf* v. *O'Reilly,* 74 N. Y. 509.) If the act is construed simply as a plan to aid in establishing a uniform system of roads and streets as the same may from time to time be taken, and dedicated to public use it serves a useful purpose and does not violate any constitutional provision. It should be so construed.

The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division, and the question certified should be answered in the negative.

HISCOCK, Ch. J., CUDDEBACK, HOGAN, McLAUGHLIN and CRANE, JJ., concur; COLLIN, J., not sitting.

Order reversed, etc.